Filed 7/24/24  Holguin Family Ventures v. County of Ventura CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| HOLGUIN FAMILY VENTURES, LLC, et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>COUNTY OF VENTURA,<br><br>    Defendant and Respondent. | 2d Civ. No. B328569<br>(Super. Ct. No. 56-2021-00561036-CU-WM-VTA)<br>(Ventura County) |

This case involves the Old Creek Ranch Winery, which "is located north of the City of [Ventura] at the end of Old Creek Road."  The winery is owned by appellant Holguin Family Ventures, LLC (Holguin).  Appellant OCRW, Inc., is the lessee of the winery.

Appellants appeal the trial court's judgment upholding a decision by the Ventura County Board of Supervisors (Board). The Board found that appellants had committed various violations of the Ventura County Non-Coastal Zoning Ordinance

(NCZO).[1]  The primary violations are that, without obtaining a conditional use permit (CUP), appellants (1) expanded the winery and wine-tasting area beyond the historical use area, and (2) changed the principal use of the ranch from crop production to a "wine tasting/associated event venue."  The Board also denied appellants' request for zoning clearance of their unpermitted installation of a paved parking lot with 40 to 50 parking spaces and charging stations for electric vehicles.

Appellants contend that, in upholding the Board's decision, the trial court applied the wrong standard of review – the substantial evidence standard.  Appellants argue that the court should have independently reviewed the 4,813-page administrative record.  We conclude the substantial evidence standard of review is the correct standard.  We further conclude that substantial evidence supports the Board's decision.

We reject appellants' claim that the trial court (1) abused its discretion in denying permission to amend their complaint to add a new cause of action for declaratory relief, and (2) erroneously denied their third cause of action for declaratory relief.  Accordingly, we affirm.

*Factual and Procedural Background*

The Old Creek Ranch encompasses approximately 800 acres.  Holguin owns approximately 329 acres.  The winery is located on Holguin's property.  The winery "currently encompasses approximately 7 acres and that . . . include[s] the parking areas and roads around it."  The ranch is zoned "agriculture exclusive."

---

[1] The NCZO is Chapter 1 of Division 8 of the Ventura County Ordinance Code.

2

In December 1981 the County issued a Zoning Clearance permitting a "Temporary/Portable Produce Stand" inside an "Existing Winery" on a lot area of 328.74 acres.  (Zoning Clearance no. 37254, attached hereto as Appendix A.)  The Zoning Clearance shows the dimensions of the existing winery were 30 feet x 20 feet, i.e., 600 square feet.  The dimensions of the proposed produce stand were 15 feet x 5 feet, i.e., 75 square feet.  A Zoning Clearance issued in 1990 (Zoning Clearance No. 67780) authorized a 676 square-foot addition to the winery.  Thus, as of 1990, the total floor area permitted for the winery and "produce stand" was approximately 1,276 square feet.

In a December 2007 letter to the County, counsel for Carmel Whitman, who at that time was the owner of the property, wrote that the "Produce Stand" was intended to be "a wine tasting area within the permitted winery."  Counsel asserted: "In reliance on [the 1981] zoning clearance, the property owners have operated a wine tasting area within the winery continuously since December 1981."

Counsel continued: "[A]lthough the winery itself has expanded over the years, it has done so on a fully permitted basis.  More important, *the wine tasting area within it has remained the same size [i.e., 75 square feet,] and has operated in the same way since it was permitted in December 1981*."  (Italics added.)  "In 1981, as they are today, wineries and wine tasting were activities incidental to the operation of grape production and vineyards."  The winery "was permitted . . . to conduct wine tastings of its own production on the winery premises incidental to its normal operations."

Counsel's December 2007 letter was triggered by the County's issuance of a notice of violation (NOV) claiming that

Whitman was "[o]perating a wine tasting room without a conditional use permit." In response to counsel's letter, in January 2008 the Planning Director wrote to Whitman: "[O]ur review of the permit files and the Zoning Ordinance in effect in the early 1980's has led me to determine that simple wine tasting, conducted in accordance with Business and Profession[s] Code section 23356.1(a), is allowed in the manner that it has been conducted on the site since the early 1980's. [¶] [Therefore], the basis for the Notice of Violation is no longer valid. The NOV is hereby rescinded and the case closed."

A 2019 Planning Commission Staff Report (Staff Report) explained why the NOV was issued and later rescinded: "[I]n 1981, the Planning Division permitted the winery and public tasting room with a ministerial Zoning Clearance. In 1985, however, the County amended the Non-Coastal Zoning Ordinance (NCZO) to require a discretionary Conditional Use Permit . . . to authorize a winery with public tours or tasting room, and to authorize any winery with over 2,000 square feet of structures. Because Old Creek Ranch Winery was permitted with a Zoning Clearance before this more stringent CUP requirement took effect, the winery is a legal nonconforming use under the NCZO . . . ." (See *Ideal Boat & Camper Storage v. County of Alameda* (2012) 208 Cal.App.4th 301, 313 ["The classic definition of a legal nonconforming use is 'one that existed lawfully before a zoning restriction became effective and that is not in conformity with the ordinance when it continues thereafter'"].)

The Staff Report continued: "In 2008, the Planning Division worked with the winery's then-owner [Whitman] to document the 'baseline' size and operations of the then-existing winery with public tasting room to establish the parameters of the winery's

4

nonconforming use which was authorized to continue without a CUP. These baseline conditions are set forth in a letter from the Planning Director to [Whitman] dated March 5, 2008 . . . ." One of the conditions was that "[a]ll activities at the Old Creek Ranch Winery must be clearly incidental, accessory, and subordinate to the primary operations of the associated winery as a production facility." The letter said that Monday through Friday, 50 to 75 winery "patrons per day . . . appears to be reasonable based upon the existing facility use." On Saturday, "between 50 and 150 [patrons] is an acceptable number. The wine tasting and tours by daily patrons would be considered typical business operations for a winery." The letter continued, "[T]he only 'events' that should be held are in conjunction with marketing or wine production educational activities, and which are . . . limited to either 15 or 25 [visitors] maximum based on the day of the week." Other events, "such as birthday and anniversary parties, family reunions, retirement parties, weddings, receptions and the like," would require a CUP.

The Board found: "It was understood between Whitman and the Planning Division that any winery activities and/or uses exceeding the established baseline set forth in the County's March 5, 2008, letter would constitute an expansion of the nonconforming use triggering the NCZO requirement for a CUP." "Whitman did not administratively appeal the Planning Director's determination thereby waiving her right, and the right of all subsequent owners of the property, to challenge the scope of the nonconforming winery use of the property that could continue without the need for obtaining a CUP."

Holguin purchased the approximately 329-acre property, including the winery, in June 2015. It closed the winery for "a

three-year period to start construction and some renovations of the property." In September 2015 the County issued to Andrew Holguin an "Inauguration of Use" "Zoning Clearance for a certificate of occupancy for an existing winery of up to 2,000 sq. ft. (bottling, processing, and storage) which includes a change of ownership."[2] The Zoning Clearance (ZC15-0948) is attached hereto as Appendix B. It noted, "There is a permitted produce stand with a non-conforming wine tasting room (Zoning Clearance #37254 [the 1981 Zoning Clearance attached as Appendix A])." ZC15-0948 stated that the earliest opening time of the "tasting room" will be 11:00 a.m. and the latest closing time will be 5:00 p.m. "No special events will be permitted on the site until an approved Conditional Use Permit is issued." The Zoning Clearance further stated, "See previous correspondence between Planning Management and previous owner [Whitman] for clarification." The "previous correspondence" includes the Planning Director's March 5, 2008 letter to Whitman which, according to the Board, "established the baseline parameter[] for the allowable nonconforming use of the winery to continue without the need for a CUP."

Despite ZC15-0948's prohibition of "special events . . . on the site until an approved Conditional Use Permit is issued," Holguin's website "advertise[d] the property as a third party venue for 'weddings, birthday, retirement, bridal shower, baby shower, gender reveal, celebration of life, rehearsal dinner' and

---

[2] Andrew Holguin stated that he "and [his] family own the Old Creek Ranch Wineries." In a letter to the Planning Director dated November 1, 2017, Andrew Holguin said he is the president of appellant OCRW, Inc., the lessee of the winery.

includes the statement, 'What better venue than Old Creek Ranch Winery.'"

At Holguin's request, the County issued several permits for improvements on the property. The permits included construction of a "2,000 sq. ft. agricultural barn," a 3,655 sq. ft. "agricultural storage building," and "a 900 sq. ft. agricultural storage building." A Construction/Demolition Zoning Clearance issued in October 2015 noted that the "[p]arcel contains existing 2,000 sq.ft. winery office."

The Staff Report states: "On November 1, 2017, [Holguin] submitted a request for a Zoning Clearance to authorize the relocation of the existing wine tasting room to the newly constructed agricultural building [the 2,000 sq. ft. agricultural barn] on the ranch . . . . On May 8, 2018, the Planning Division responded to the . . . request and indicated the need for a site visit and 'additional information to confirm that the cumulative square footage dedicated to the winery use is under the maximum 2,000 sq. ft. that can be approved through a ministerial permit' and to clarify that public use of the property continues to be accessory to crop production and does not become a principal use of the property that would require a conditional use permit on its own . . . . [Holguin] denied the County a site visit . . . ."

"Starting in March 2018, public complaints were submitted to the Code Compliance Division in regard to the use of the property for unpermitted outdoor winery-related events and associated activities without the required permits and the increase of traffic and noise." "After confirming violations described in multiple complaints . . . , the Code Compliance Division issued a Notice of Violation . . . (Violation Case No.

CV18-0095) to [Holguin] on May 4, 2018." Holguin appealed the NOV.

In July 2018 "[a] County Building and Safety inspector issued a Stop Work Order to [Holguin] . . . for the installation of unpermitted electrical infrastructure and electric vehicle charging stations for a newly paved parking lot with approximately 40 parking spaces." The Planning Division denied Holguin's request for a Zoning Clearance authorizing the improvements. It said "that 'the car chargers and parking lot should be incorporated into a conditional use permit rather than be approved through a zoning clearance' since the construction and new parking lot is considered an expansion of the winery . . . ." Holguin appealed the denial of the Zoning Clearance.

In January 2019 "County staff inspected the winery grounds and all of the existing buildings, except for one, which [Holguin] denied access . . . . The site inspection revealed that the winery had, in fact, expanded significantly from its original footprint and scope as established in the 1980s." Another NOV was issued to Holguin (Violation No. CV19-0012). The County claimed that Holguin had expanded "the nonconforming winery without a CUP" and had changed the principal use of the property from "crop production" to a "wine tasting/associated event venue." Holguin filed a timely appeal.

In March 2019 a hearing before the Planning Commission was conducted on Holguin's appeals. The Planning Commission unanimously denied the appeals. Holguin appealed to the Board. After conducting a public hearing in September 2019, the Board unanimously upheld the Planning Commission's decision.

8

Several persons who resided on Old Creek Road spoke at the hearing before the Board. The winery is located at the end of the road. Angela Ross said she had visited the "old winery over ten years ago." "[I]t was a very small, intimate type area." "[T]here was only enough [space] for eight to ten customers to sit at the little bar to do the wine tasting." Since the reopening of the winery after its sale to Holguin, Old Creek Road "is now like a freeway." "[W]e don't get to go out and ride our bikes. We don't get to go out walking because there is too many cars and it is very unsafe." Steven Johnson complained, "There's hundreds of cars on the weekends." Chris Moore said, "[T]here have been many events over the past year that have been held without any permits. These events have created weekend traffic that has become untenable from the sheer number of cars, trucks, buses, Jeep caravans, motorcycles, and 18-wheelers."

Terri Wolfe submitted a written statement signed by 13 persons who resided on Old Creek Road. Wolfe said: "From weddings that are advertised to have a 200-person capacity, to an international corporate meeting for Volvo where hundreds of people drove test cars originating at the winery, to tour bus operators passing in full-sized tour buses, the venue has advertised and (presumably) held 57 music events and 33 food truck events in their first twelve months. . . . It has created a nightmare for our road."

Holguin filed a petition for a writ of mandate challenging the Board's decision. The trial court vacated the decision because the Board had failed to make adequate written findings. The court ordered the Board to conduct a new noticed public hearing.

Before the new hearing was conducted, the Board rescinded the NOV for unpermitted winery events (NOV CV18-0095). The

9

remaining NOV (CV19-0012) was primarily for the unpermitted expansion of the winery and change of principal use of the property.  The other matter before the Board was Holguin's appeal from the denial of its "request for a zoning clearance to authorize . . . electric vehicle charging stations and electrical infrastructure installed in a 40-plus vehicle parking lot that was constructed by [Holguin] . . . without County approval."

Terri Wolfe spoke at the new hearing in November 2021.  She said: "Old Creek Road is a very narrow County road.  It's basically a one-lane road, and ends at a dead end.  Most houses are built within a few yards of the road.  For over 20 years, I and others rode our horses, walked dogs, we taught our children to ride bikes, we exercised, and visited neighbors.  It was a quiet, rarely traveled road.  There was a winery at the end of the road with an estimated 20 to 30 cars visiting on a weekend day.  [¶] For the past several years, we no longer go out on the road on the weekends.  We do not exercise there, ride horses, walk dogs, or visit with neighbors, because it's too dangerous.  Now, hundreds of cars speed by to the event venue.  They drink alcohol before getting back in cars for the return trip.  Tour vans, and wine tour jeeps pass by continuously. . . .  This past weekend, a friend visiting the winery at our request, counted roughly 200 people wine tasting at one time.  [¶]  Old Creek Road was improved for the use of 12 single family residences.  It was not constructed for the use by a major event venue."  "We and others have experienced the vast expansion of the winery.  Storage sheds are not used for storage sheds, and the expansion is very extensive."

A representative from the County Fire Prevention Division said the property is in "a high and moderate fire severity zone."  "The proposed uses" of the property would "require a minimum

10

20-foot wide road" to the winery, but the existing road does not meet this requirement. "[A] secondary access" to the property would also be required, but it does not exist. The secondary access would have to meet the same requirements as the primary access.[3]

At the conclusion of the new hearing, the Board unanimously voted to deny Holguin's appeals. In support of its decision, the Board made 155 findings of fact and conclusions of law.

In December 2021 appellants filed in the trial court a 52-page complaint against the County. Appellants sought to overturn the Board's denial of Holguin's appeals. The complaint alleged five causes of action. The first cause of action was a petition for a writ of administrative mandate. (Code Civ. Proc., § 1094.5.) The second was a petition for a traditional writ of mandate. (*Id.*, § 1085.) The third and fourth causes of action were for declaratory relief, and the fifth cause of action was for inverse condemnation.

The trial court determined that the Board's decision should be reviewed under the substantial evidence standard. The court concluded: "Based on the evidence, the County has made a compelling argument that [appellants] converted the property's principal use from crop and wine production into a relatively

---

[3] The County Fire Marshall, Massoud Araghi, spoke at the original September 2019 hearing but not at the new hearing before the Board. At the original hearing Araghi said that, "[i]f [the project] was coming today for conditioning, most likely [a secondary access road] would be one of the conditions." Araghi was concerned about "having the number of people in a location where it would be difficult to evacuate in a fire or any emergency situation."

11

elaborate commercial wine bar and event space." "'[T]he County seeks for [appellants] to either abide by the scope of the winery's legal nonconforming use by scaling back to its historic size and operations, or seek the necessary conditional use permit for the expanded and modified winery. Substantial evidence supports the Board's decision to uphold the violations and deny [appellants'] appeals . . . .'"

The trial court entered judgment in favor of the County on appellants' writ petitions and causes of action for declaratory relief. Appellants dismissed without prejudice the remaining cause of action for inverse condemnation.

*Standard of Review*

"The exclusive remedy for judicial review of administrative action affecting land use is a proceeding under Code of Civil Procedure section 1094.5. [Citations.] A trial court's review of an administrative decision is subject to two possible standards depending on the nature of the right involved. [Citation.] [¶] If the administrative decision involved or substantially affected a 'fundamental vested right,' the [trial] court exercises its independent judgment upon the evidence disclosed in a limited trial de novo in which the court must examine the administrative record for errors of law and exercise its independent judgment upon the evidence. [Citations.] [¶] Where no fundamental vested right is involved, the trial court's review is limited to examining the administrative record to determine whether the agency's decision and its findings are supported by substantial evidence in light of the whole record. [Citation.]" (*SP Star Enterprises, Inc. v. City of Los Angeles* (2009) 173 Cal.App.4th 459, 468-469 (*SP Star Enterprises*).)

12

"Regardless of the nature of the right involved or the standard of judicial review applied in the trial court, an appellate court reviewing a trial court's ruling on administrative mandamus applies a substantial evidence standard. [Citations.] 'If a fundamental vested right was involved and the trial court therefore exercised independent judgment, it is the trial court's judgment that is the subject of appellate court review. [Citations.] On the other hand, if the [trial] court properly applied substantial evidence review because no fundamental vested right was involved, then the appellate court's function is identical to that of the trial court. It reviews the administrative record to determine whether the agency's findings were supported by substantial evidence . . . .' " (*SP Star Enterprises*, *supra*, 173 Cal.App.4th at p. 469.)

"Under the substantial evidence test, the agency's findings are presumed to be supported by the administrative record and the appellant challenging them has the burden to show they are not." (*SP Star Enterprises*, *supra*, 173 Cal.App.4th at p. 469.) "[T]he reviewing court [must] consider all relevant evidence in the administrative record and view that evidence in the light most favorable to the agency's findings, drawing all inferences in support of those findings. [Citation.] The reviewing court does not substitute its own findings and inferences for that of the agency. [Citation.] 'Only if no reasonable person could reach the conclusion reached by the administrative agency, based on the entire record before it, will a court conclude that the agency's findings are not supported by substantial evidence.'" (*Akella v. Regents of University of California* (2021) 61 Cal.App.5th 801, 814 (*Akella*).)

13

"'[T]he burden is on appellant to show there is no substantial evidence whatsoever to support the findings of the Board.' [Citation.] [¶] . . . It is for the [Board] to weigh the preponderance of conflicting evidence . . . ." (*Young v. City of Coronado* (2017) 10 Cal.App.5th 408, 419 (*Young*).) ""Substantial evidence has been defined as relevant evidence that a reasonable mind might accept as adequate support for a conclusion. . . .""" (*Inyo Citizens for Better Planning v. Inyo County Bd. of Supervisors* (2009) 180 Cal.App.4th 1, 13.)

*The Trial Court Correctly Applied the*
*Substantial Evidence Standard of Review*

Appellants contend the judgment must be reversed because the trial court erroneously applied the substantial evidence standard of review. Appellants argue, "[B]ecause Holguin's fundamental vested rights to the historical use of the Winery are at stake, the law requires that the evidence be subject to the court's independent judgment."

"A right may be deemed fundamental "'on either or both of two bases: (1) the character and quality of its economic aspect; [or] (2) the character and quality of its human aspect." [Citation.] "The ultimate question in each case is whether the affected right is deemed to be of sufficient significance to preclude its extinction or abridgement by a body lacking *judicial* power. [Citation.]" [Citation.] "In determining whether the right is fundamental the courts do not alone weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life situation.'" [Citation.] Further, a fundamental right is *vested* if it is 'already possessed by the individual' . . . ." (*Saraswati v. County of San Diego* (2011) 202 Cal.App.4th 917, 926-927.)

14

"The courts have rarely upheld the application of the independent judgment test to land use decisions. Those cases [in which the courts have applied the test] have typically involved classic vested rights." (*Goat Hill Tavern v. City of Costa Mesa* (1992) 6 Cal.App.4th 1519, 1527 (*Goat Hill Tavern*).)

Appellants assert: "Where a petitioner has a vested right to a nonconforming use and seeks approval to expand it, courts will employ substantial evidence review. [Citation.] But when a petitioner's action seeks to protect its existing nonconforming use from government action which threatens to extinguish the existing and vested right, such as here, the trial court must independently review the evidence." "Holguin does not argue that it has a vested right to expand the nonconforming use. Nor has Holguin applied for an expansion of the nonconforming use." "Holguin contends that its vested rights are governed by the scope of the business in 1985," when the NCZO was amended to require a conditional use permit for a winery with a wine-tasting room or with over 2,000 square feet of structures. "Holguin argues . . . that (1) it has the right to maintain an unexpanded nonconforming use as it existed in 1985, and (2) the County's actions have infringed on that right."

If Holguin has a fundamental vested right to maintain an unexpanded, nonconforming use of the winery as it existed in 1985, the County has not taken any action to narrow the scope of that use. In 1985 the winery was limited to 600 square feet, and the wine-tasting room was limited to 75 square feet within the confines of the winery. (See the December 1981 Zoning Clearance attached hereto as Appendix A.) Accordingly, the trial court correctly applied the substantial evidence standard of

15

review because the Board's decision did not affect a fundamental vested right.

*Goat Hill Tavern*, *supra*, 6 Cal.App.4th 1519, is distinguishable.  There, the court held that a city's refusal to renew a tavern owner's conditional use permit implicated a fundamental vested right – "the right to continue operating an established business in which he has made a substantial investment."  (*Id.*, at p. 1529.)  "By simply denying renewal of its conditional use permit, the city destroyed a business which has operated legally for 35 years."  (*Id.*, at p. 1531.)

The County did not destroy Holguin's business.  Unlike the tavern owner, Holguin was allowed to continue to operate the winery and wine-tasting room as they had been operated by previous owners within the parameters of the 1985 legal nonconforming use.

*Substantial Evidence Supports*
*Violations 1, 3, 4, and 8 of NOV CV19-0012*

Appellants contest the Board's upholding of violations 1, 3, 4, and 8 of NOV CV19-0012.

*Violation 1*

As described in NOV CV19-0012, Violation 1 is as follows: "Expansion of the non-conforming winery without a CUP (structures/uses beyond the 2,000-sq. ft. ministerial limit) – wine tasting/associated event venue has become the principal use of the property and not secondary to wine production (crop production) and includes several additional structures used for the wine tasting/event venue and grounds improvements . . . ."

At the new hearing before the Board in September 2021, Franca Rosengren, the case planner for the project, stated: "The principal use of the property was historically agricultural, and

16

now it is no longer producing crops on site for the production of wine, but rather it's run as a de facto bar, where they've set up several bars throughout the facility, or the property, where they're . . . serving and selling wine grown and produced off site. They've increased the area occupied by the public wine tasting, and also the occupancy capacity of the buildings, and the parking lots." "So the winery footprint has tripled in size, buildings have been converted to winery related uses, which exceed the 2,000 square foot ministerial Zoning Clearance limit, and crop production has become secondary to the winery use."

Jacklyn Smith, Assistant County Counsel, stated, "[W]hat we know is that under the Whitmans, their wine tasting operation was limited to wine tasting inside of the original, 1981 winery building. What we also know is that under [Holguin's] ownership, wine tasting occurs pretty much throughout the property. It was no longer just limited to the inside of that original winery building."

A newspaper article published in the Ventura County Star on April 1, 2018, said that in late February 2018 a private wine-tasting event had occurred at the winery. "Available by the taste, glass and bottle, the wines were poured at outdoor counters by" members of the Holguin family. "The outdoor counters will be in use again come April 7," when the winery will celebrate its official reopening.

The Board found: "Permittee testified that the grapes used to make wine now being served at the [winery] are grown offsite in Paso Robles and Northern Santa Barbara County.[4] . . . [T]he

---

[4] The Board said that "Permittee" refers collectively to appellants Holguin, i.e., Holguin Family Ventures, LLC, and

grapes are then shipped to a winery in Paso Robles where they are crushed, fermented and bottled.  [Record citation.]  In contrast, Permittee acknowledged that the prior owner . . . had conducted winemaking onsite.  [Record citation.]  [¶]  [] Permittee has converted the principal use of the property from agricultural use to instead using the property for the principal purposes of serving and selling wine produced offsite and associated assembly uses.  [Record citation.]  Permittee has increased the amount of wine that can be and presumably is being sold, as well as [the] number of patrons and overall intensity of the winery land use, as compared to the property's historic nonconforming winery use."  "Based upon Permittee's unpermitted expansion and changed use of the winery such that the principal use is no longer agricultural production, the County issued NOV CV19-0012 to Permittee . . . ."  Section 8102-0 of the NCZO defines "expansion" as "[i]ncreasing the area or volume occupied by or devoted to a use . . . ."  It defines "Change of Use" as occurring "[w]here a new use of land or structures is initiated in place of, or in addition to, a previous use."

In support of its decision to uphold violation 1, the Board made 15 findings.  One of the findings was that "[a]n ABC license premises diagram dated March 29, 2018, which was submitted by Permittee to obtain a revised ABC license, increased the area designated for public wine consumption at the winery to 130,000 sq. ft. and encompassed multiple buildings and structures never before authorized for public wine and consumption in prior winery ABC licenses."  The diagram is attached hereto as Appendix C.

---

OCRW, Inc., as well as Andrew Holguin, who is not named as an appellant.

Appellants contend that "what Holguin is accused of [i.e., the change of principal use of the property without a CUP,] isn't even a violation." We disagree. The Board explained: "Because the principal use of the property was historically agricultural, and because Permittee has 'change[d] the use' of the property to now be used principally for the purpose of serving and selling wine grown and produced offsite, at a volume and intensity that far exceeds any prior wine tasting operation, the [Permittee] must 'conform to the provisions of [the NCZO], including the requirements for type of permit.' Under the current provisions of the NCZO, a CUP is required to operate the winery because it is a winery in the A-E zone 'with public tours or tasting rooms.'[5] (NCZO, § 8105-4 [permitted use matrix for wineries].) Wineries are categorized as a 'Crop and Orchard Production' land use, meaning that wineries must principally consist of the growing of grapes and production of wine onsite. (*Ibid*.) Thus, because [the NCZO, § 8105-4] Permittee has 'change[d] the use' of the property as compared to its historic nonconforming use, Permittee's current operation requires a CUP and exists in violation of sections 8101-3.1, 8105-4 and 8113-10.3(b)." NCZO section 8113-10.3(b) provides: "Except as provided in this Section, any modification or expansion of the use or structure, change of use, or additional use shall conform to the provisions of this Chapter, including the requirements for type of permit. . . . ."

_____

[5] NCZO section 8104-1.2 provides: "The purpose of [the Agricultural Exclusive (AE) Zone] is to preserve and protect commercial agricultural lands as a limited and irreplaceable resource, to preserve and maintain agriculture as a major industry in Ventura County and to protect these areas from the encroachment of nonrelated uses which, by their nature, would have detrimental effects upon the agricultural industry."

Appellants next claim that the "Board's findings do not support" the change-of-principal-use violation. "[T]he findings 'must expose the board's mode of analysis to an extent sufficient to serve the purposes' of the need for findings." (*Young, supra,* 10 Cal.App.5th at p. 421.) "[T]he findings should 'enable the parties to the agency proceeding to determine whether and on what basis they should seek review.'" (*Ibid*.) "[C]ourts have stated that '[a]dministrative agency findings are generally permitted considerable latitude with regard to their precision, formality, and matters reasonably implied therein.' [Citation.] An agency's findings under Code of Civil Procedure section 1094.5 '*do not need to be extensive or detailed*.' [Citation.] 'In addition, findings are to be liberally construed to support rather than defeat the decision under review.'" (*Ibid*.) We agree with the County that the Board's detailed "findings provide more than enough information to bridge the analytic gap between the evidence and the decision."

Finally, appellants maintain that "the Board's findings on the principal use claim are not supported by the evidence." (Bold and capitalization omitted.) Appellants assert that there "is not sufficient evidence to conclude that the principal use of the Ranch was ever agriculture in comparison to the Winery."

Substantial evidence supports the Board's finding that in the 1980s the "principal use of the property was agricultural." According to "A Historical Geography" of the property prepared by Barbara Ann Snyder in 1985, at that time the property contained "a large orchard and there are on-going experimental plantings. A survey is now in progress and a new map of the plantings soon to be completed will include: 11 varieties of apples, 7 of plums, 6 of apricots, 5 of almonds and pears, 4 of cherries,

peaches and figs, just to name a few. In addition to the tree crops, an acre of boysenberries and 7 varieties of seedless grapes have been planted." In 1981 "[t]wenty-two hundred wine grapes [*sic*, should read 'grape vines'] were planted on 4 ½ acres. . . . A projected goal of 15 acres is anticipated for the future." "[T]he open hillsides . . . are today used for agriculture: oat[,] hay, deciduous fruits, berries, etc. 'The ranch has some 120 agriculture acres and the remainder [207] [acres] is wildlands . . . ." (Brackets for "207" in orignal.) An earlier owner of the property, Antonio Riva, "planted apple, pear and plum trees and various vegetables and sold produce to city dwellers in Ventura." He also "planted approximately 14 acres of grapes."

### Violation 3

Violation 3 of NOV CV19-0012 alleges that Holguin made a "[n]on-permitted conversion" of a "2,000-sq.ft. agricultural storage building" to a building "for 'amusement and recreational activities', such as . . . yoga instruction[,] . . . contributing to the expansion of the non-conforming winery use . . . ." Substantial evidence supports Violation 3.

The Board found that the 2,000 square-foot agricultural storage building had been used for winery-related events because "[o]n January 1, 2019, Permittee hosted a yoga and wine-tasting event inside the [building], which according to Permittee, featured a '2 hour yoga class followed by wine tasting including six varietals.'" The quoted language attributable to Permittee is taken from an advertisement for the event. The advertisement stated, "Only a few remaining spots for tomorrow's Yoga & Wine Tasting!"

The Board also found that "[a] social media post by Permittee shows the 2,000 sq. ft. . . . building being used for

21

'pourer training and wine tasting.'  Permittee refers to the 2,000 sq.ft. . . . building as 'the new tasting room.'"  "Photos of the 2,000 sq. ft. . . . building show a built-in wooden bar, multiple wine barrel tables with chairs . . . ."  "Photos show groups of people drinking wine at the 2,000 sq. ft. agricultural building."

The Board concluded: "The use of such building for a yoga and wine tasting event on January 1, 2019, for pourer training and wine tasting, and in light of the permanent fixtures installed to facilitate wine tasting such as a permanent wooden bar, . . . and wine barrel tables and chairs demonstrate that the structure was constructed and is used for the winery use and therefore 'expands' upon the historic, nonconforming winery use.  A CUP was therefore required to authorize the construction and use of this winery building."  "Moreover, by constructing and using an additional 2,000 sq. ft. building for winery-related uses, in addition to the 2,000 sq. ft. winery building authorized by ZC15-0948 [Appendix B, p. 1], Permittee violated [the NCZO] because Permittee is operating a winery with a tasting room, and with greater than 2,000 sq. ft. of structures, without the requisite CUP."  We agree with the Board.

Appellants argue, "[T]he Board incorrectly assumed that Holguin is limited to 2,000 [square feet] of winery-related structures."  Contrary to appellants' argument, ZC15-0948 (Appendix B, p. 1) granted to Holguin "Zoning Clearance for a certificate of occupancy for an existing winery of up to 2,000 sq.ft. (bottling, processing, and storage)."  ZC15-0948 refers to Zoning Clearance no. 37254 (Appendix A), which shows that the 75 square-foot wine-tasting area is located within the winery. Appellants acknowledge that ZC15-0948 "references and maintains the existing . . . produce stand," i.e., the wine-tasting

22

area.  In Whitman's counsel's December 2007 letter to the County, counsel said, "[T]he wine tasting area within [the winery] has remained the same size and has operated in the same way since it was permitted in December 1981."

Because appellants did not appeal ZC15-0948 when it was issued in 2015, they are bound by it.  "A landowner cannot challenge a condition imposed upon the granting of a permit after acquiescence in the condition by either specifically agreeing to the condition or failing to challenge its validity, and accepting the benefits afforded by the permit."  (*Rossco Holdings Inc. v. State of California* (1989) 212 Cal.App.3d 642, 654 (*Rossco Holdings Inc.*).)  Section 8111-7.1 of the NCZO provides for the filing of "[a]n application for an appeal concerning any order, requirement, permit or decision made in the administration of [the NCZO]."

In their opening brief appellants contend "the County issued entitlements for winery-related structures far exceeding the NCZO's current 2,000-[square-foot] ministerial cap."  They list four zoning clearances issued between 1981 and 1990 that allegedly expanded the floor space of the winery beyond the 2,000 square-foot limit.  If such an expansion occurred, appellants should have challenged the 2,000 square-foot limit of ZC15-0948 when it was issued to them in 2015.  Instead, Andrew Holguin signed the following certification on ZC15-0948, "I have reviewed, read and understand the terms, notes and conditions of this permit . . . and *agree to abide by them . . . .*"  (Italics added; see Appendix B, p. 2.)  In a letter to the Planning Division dated November 1, 2017, Andrew Holguin wrote, "Under current zoning restrictions OCRW [Old Creek Ranch Winery] is limited to 2,000 sf of Winery."

23

In any event, three of the four zoning clearances cited by appellants made no mention of expanding the winery. Zoning Clearance No. 36533, issued on March 13, 1981, authorized the construction of a 30 x 30-foot "out-structure office/tack rm." Zoning Clearance No. 36763, issued on May 28, 1981, authorized the construction of a 20 x 30-foot "storage structure on ag. preserve." Zoning Clearance No. 43844, issued on August 8, 1986, authorized a "storage addition" without specifying the dimensions of the addition. The fourth Zoning Clearance, No. 67780 issued on January 23, 1990, authorized a 676 square-foot expansion of the winery. As we noted at p. 3, *ante*, this expansion increased the size of the winery from 600 to approximately 1,276 square feet, well within the 2,000 square-foot limit specified in ZC15-0948.

*Violation 4*

Violation 4 of NOV CV19-0012 is for a "[n]on-permitted conversion of [a] 900 sq. ft. agricultural shed to a large agricultural sales facility that includes the display of items for sale, such as books, china, wine baskets, shirts, and olive oil . . . ." Substantial evidence supports Violation 4.

The Board found: "Permittee applied for and, on November 30, 2016, was issued a zoning clearance to construct a 900 sq. ft. general agricultural storage building with utility sink and covered deck on Permittee's property . . . ." "At site inspection conducted by Planning staff on January 9, 2019, the . . . [building] did not contain any agricultural-related equipment or materials but rather included the display of items for winery-related retail sale such as books, china, wine baskets, shirts and olive oil." "The addition of a 900 sq.ft. building used by Permittee to display winery-related merchandise for sale to patrons of the

24

winery is an 'expansion of the [nonconforming] . . . use or structure' of the winery. . . . [It] add[s] uses or structures accessory to the 2,000 sq. ft. winery building authorized by ZC15-0948. . . . [B]ecause the 900 sq. ft. general agricultural barn . . . expands upon the nonconforming winery, the current permit requirement of the NCZO apply and under those provisions a CUP is required to operate the winery."

The administrative record includes a posting on social media that shows a photograph of the purported agricultural storage building. Next to the photograph, Holguin stated, "Our 'Fruit Stand' is coming along! Can't wait for it to open so you can see what we will have in-store!" A member of the public responded, "A fruit stand. What a great addition. This will be a full service Winery for sure." The response shows that the public perceived the sales facility to be an integral part of the winery.

Another photograph shows a sign with the word "WINERY" in bold letters. An arrow points in the direction of the winery. Below this sign is another sign in bold letters advertising "Holiday Gifts." The sign shows that appellants intended the sales facility to be an integral part of the winery. It was the winery's "gift shop."

*Violation 8*

Violation 8 of NOV CV19-0012 alleges that Holguin made a "[n]on-permitted expansion of the non-conforming winery use, by using the approximately 3,000 sq. ft. agricultural storage building for the storage/warehousing of boxes of bottled wine, which should be located within the existing 2,000-sq. ft. wine tasting, wine storage building, without a CUP . . . ."

Appellants argue: "[The] Building [] is approved for agricultural and storage uses. [Record citation.] Wine in bottles

25

and barrels is the product of the agricultural operation of processing grapes into wine and can be stored in Holguin's agricultural buildings like any other agricultural product or equipment. . . . Holguin is just storing agricultural end-products in a building permitted for agricultural storage."

We disagree. ZC15-0948 (Appendix B, p. 1) provides "Zoning Clearance for a certificate of occupancy for an existing winery of up to 2,000 sq. ft. (bottling, processing, and *storage*) . . . ." (Italics added.) Thus, bottles of wine are to be stored within the winery. Moreover, the Board noted that "[t]he storage of wine bottles or finished wine in barrels is specifically identified [by the NCZO] as counting toward the square footage of a winery use. (NCZO, § 8105-4 ('Wineries').)" NCZO section 8105-4 provides, "Wineries (*including* Processing, Bottling & Storage)" require a CUP if the square footage of the "structure" is "[o]ver 2,000 . . . sq. ft." (Italics added.)

Accordingly, substantial evidence supports the Board's finding that, "[b]ecause Permittee used the agricultural building . . . to store bottles of wine, this square footage is counted toward the winery use. And because such square footage exceeds 2,000 sq. ft., a CUP is required."

*Substantial Evidence Supports the Board's Denial of a Zoning Clearance for the Parking Lot and Charging Stations*

The Board found: "Permittee's zoning clearance application . . . seeks to . . . legalize, after-the-fact, EV charging stations and associated electrical infrastructure located in a new paved parking lot constructed by Permittee. [Record citation.] Permittee removed and paved over what was previously an agricultural field designated as having soils of statewide importance, measuring approximately 16,000 sq. ft., to construct

26

the parking lot where the EV charging stations are located. [Record citation.] The . . . parking lot contains approximately 40-50 parking spaces. [Record ciation.] [¶] [] The parking lot, EV charging stations and related electrical infrastructure are used by patrons of the winery when they visit the winery for wine tasting and/or other winery-related activities."

The Board further found that, by installing the new parking lot and EV charging stations, "Permittee 'increase[d] the area . . . [of the property] occupied by or devoted to' the use of the winery. Moreover, the installation of EV charging stations . . . [was] for the purpose of attracting more patrons and increasing the intensity of the use beyond that of the historic wine tasting operation." "[B]ecause the parking lot, EV charging stations and related electrical infrastructure modifies and expands upon the winery use, a CUP is required to approve such modifications and expansions."

Appellants contend: "[T]he parking area of the Ranch is not part of the Winery. Nor is the parking area a use or structure that is accessory to the Winery." "[T]he parking lot did not increase the area or volume occupied by or devoted to the winery. Parking on the Ranch is not new; the Ranch has historically been open to the public, including public visitors to the Winery. [Record citation.] Parking has historically occurred throughout the Ranch in unpaved areas . . . ." "Thus, Holguin did not 'expand' the Winery merely by upgrading the Ranch's preexisting parking areas, paving the lot and including eco-friendly charging stations. There is no basis for requiring Holguin to seek a discretionary CUP just to provide a paved parking surface."

Viewing the "evidence in the light most favorable to the [Board's] findings, [and] drawing all [reasonable] inferences in

support of those findings," we conclude a reasonable person could find that appellants' installation of the parking lot and charging stations was an integral component of the expansion of the winery beyond its legal non-conforming use.  (*Akella, supra*, 61 Cal.App.5th at p. 814.)  The winery previously had been a small operation.  Angela Ross, who spoke at the original hearing before the Board, said that when she had visited the "old winery over ten years ago . . . it was a very small, intimate type area."  "[T]here was only enough [space] for eight to ten customers to sit at the little bar to do the wine tasting."

The paved parking lot with 40 to 50 parking spaces and EV charging stations was much larger than necessary to accommodate visitors to the winery before its expansion by appellants.  The purpose of these improvements was to attract many more visitors than the unexpanded winery could accommodate, thereby promoting and facilitating its expansion.  We agree with the case planner's statement at the original Board hearing that the expansion of the winery and the installation of the paved parking lot and charging stations must be considered together as comprising a single project.  The case planner said, "We look at . . . the whole of the action.  [The parking lot and charging stations] are part of the winery itself and part of the [] now . . . non-conforming winery."

*The Trial Court Did Not Abuse Its Discretion in Denying Appellants' Motion to Amend Their Complaint*

After the trial court had ruled in favor of the County, but before judgment was entered, appellants filed a motion to amend their complaint to add a new cause of action for declaratory relief.  The proposed new cause of action stated: "On November 28, 2022, this Court denied [appellants'] petitions for writ of mandate,

ruling that [they] must 'either abide by the scope of the winery's legal nonconforming use by scaling back to its historic size and operations, or seek the necessary conditional use permit for the expanded and modified winery.' However, the Court's ruling did not establish the 'historic size and operations' of the Winery—an open question that must be answered in order to inform [appellants] as to the NOV abatement that is supposedly required." "[Appellants] thus seek a judicial declaration: (1) that the [March 5,] 2008 Letter [from the Planning Director to Whitman, the winery's previous owner,] does not establish the 'historic size and operations' of the Winery; and (2) determining the 'historic size and operations' of the Winery."

The trial court denied appellants' motion to amend. It stated three grounds for the denial. The first was that "[t]he proposed cause of action is essentially the same as the declaratory relief causes of action which were already decided and denied." The court explained: "The Court previously upheld the Board's decisions regarding the notice of violations as outlined in [the] 2008 letter and the 2015 [zoning] clearance [Appendix B], which described and outlined the historic use of the winery. While the Court's Order may not have explicitly described the applicable operating hours, customer counts and limits, types and frequency of events, etc., the underlying letter and [zoning] clearance did. The Court upheld the NOV decisions in their entirety which were based upon those documents. There is no ambiguity in need of clarification."

The court's second ground for denying the motion was that "the delay in moving to amend [is not] justified because [appellants have] not adequately explained the failure to raise the claim earlier." The third ground was that appellants have

29

"not alleged an actual controversy that is proper for resolution by the Court in the first instance because the Court will not issue an advisory opinion."

"'[T]he trial court has wide discretion in allowing the amendment of any pleading [citations], [and] as a matter of policy the ruling of the trial court in such matters will be upheld unless a manifest or gross abuse of discretion is shown. . . .'" (*Record v. Reason* (1999) 73 Cal.App.4th 472, 486 (*Record*).) "A court abuses its discretion if its ruling is so irrational or arbitrary that no reasonable person could agree with it. [Citation.] An abuse of discretion occurs if, in light of the applicable law and the relevant circumstances, the court's decision exceeds the bounds of reason, resulting in a miscarriage of justice." (*Olive v. General Nutrition Centers, Inc.* (2018) 30 Cal.App.5th 804, 827-828.)

The trial court did not abuse its discretion in denying leave to amend the complaint to add the new cause of action. Appellants' justification for adding the cause of action was unfounded. They alleged that *the court* had ruled that appellants "must 'either abide by the scope of the winery's legal nonconforming use by scaling back to its historic size and operations, or seek the necessary conditional use permit for the expanded and modified winery.'" But the court did not so rule. Instead, it said, "'[T]he *County seeks* for [appellants] to either abide by the scope of the winery's legal nonconforming use by scaling back to its historic size and operations, or seek the necessary conditional use permit . . . .'" (Italics added.) The court's ruling was that "'[s]ubstantial evidence supports the Board's decision to uphold the violations and deny [appellants'] appeals . . . .'"

30

Furthermore, the trial court reasonably concluded that clarification was unnecessary because the Board's detailed findings make clear that, if appellants do not obtain a CUP, they must limit the winery and wine-tasting area to the 2,000 square-foot winery building that existed in 2015 when the County issued Holguin the Inauguration of Use ZC 15-0948. ZC 15-0948 specifies the permissible "hours of operations for the tasting room" and provides that "[n]o special events will be permitted on the site until an approved Conditional Use Permit is issued." (Appendix B, p. 1.)

In addition, the Board's findings make clear that appellants are bound by the March 5, 2008 letter from the Planning Director to Whitman. ZC 15-0948 states, "See previous correspondence between Planning Management and previous owner [Whitman] for clarification." When ZC 15-0948 was issued on September 21, 2015, appellants knew that this correspondence includes the March 5, 2008 letter. The Board found: "On August 10, 2015, [before ZC 15-0948 was issued,] Permittee sent the Planning Division a letter acknowledging the aforementioned March 5, 2008, letter establishing the scope of the legal nonconforming winery use. [The letter was from Andrew Holguin in his capacity as President of OCRW, Inc.] The letter then requested permission for [the winery] to have 'slightly' longer operating hours [than permitted in the March 5, 2008 letter]. [Record citation.] In a response to Permittee's architect dated August 19, 2015, [also before ZC 15-0948 was issued,] the Planning Division informed [the architect] that a CUP would be required to exceed the operating parameters of the March 5, 2008, letter, and stated that . . . '[the winery] will be only allowed to operate under the standards set forth in the March 5, 2008 letter' [record citation].

31

Consequently Permittee, by its own admission, was informed and understood the limitations of the legal nonconforming winery use that could continue without the need for a CUP . . . ."

The Board found that, by not administratively appealing "the Planning Director's determination as to the scope of the nonconforming winery" as set forth in the March 5, 2008 letter, Whitman had "waive[d] her right, *and the right of all subsequent owners of the property*, to challenge [that determination]." (Italics added.) Irrespective of Whitman's waiver, appellants are bound by the March 5, 2008 letter because they did not appeal ZC 15-0948, which incorporated the letter. (*Rossco Holdings Inc.*, *supra*, 212 Cal.App.3d at p. 654.)

In their reply brief appellants assert: "Holguin was a new owner and would not have even known that the [March 5,] 2008 Letter existed. That Holguin would have been expected to surmise that the 2015 Zoning Clearance incorporated some letter it was not even aware of is absurd." The previously referred to August 10, 2015 letter from Andrew Holguin shows that appellants' assertion is false. In that letter Andrew Holguin expressly mentioned the March 5, 2008 letter: "In another letter from Ventura Country [*sic*] . . . dated March 5, 2008 (see attached) the country [*sic*] authorized the following hours and conditions of operation of the Wine Tasting Room and associated facilities . . . ." Andrew Holguin said that "OCRW, Inc. is asking for a slight increase in [the hours of] operation from the previous owner [Whitman] of Old Creek Ranch . . . ."

Finally, the trial court did not abuse its discretion because it reasonably concluded that appellants had unreasonably delayed their motion to amend the complaint. "'[E]ven if a good amendment is proposed in proper form, unwarranted delay in

32

presenting it may—of itself—be a valid reason for denial.'" (*Record, supra,* 73 Cal.App.4th at p. 486.)

*Appellants' Third Cause of Action for Declaratory Relief*

Appellants' third cause of action for declaratory relief alleged, inter alia, that they "may host an unlimited number of outdoor events with up to 100 attendees at the Ranch pursuant to NCZO § 8107-46.1," and that they "may host up to 10 outdoor events with between 101 and 350 attendees at the Ranch pursuant to NCZO § 8107- 46.3(a)(3)." The trial court ruled, "The claim for declaratory relief is denied because the County rescinded the NOV [NOV CV18-0095] citing [appellants] for hosting large-scale winery events. . . . The issue is moot."

Appellants argue that the issue is not moot because "the County threatened Holguin with further violations and penalties in the case of additional outdoor events." Appellants contend: "The County . . . has no basis to prohibit Holguin from hosting outdoor events consistent" with an ordinance that was enacted in 2018, NCZO section 8107-46 (the Outdoor Events Ordinance). "By its terms, the . . . ordinance allows Holguin to host outdoor events consistent with its parameters." "True, the 2015 Zoning Clearance [ZC15-0948 (Appendix B)] does say that no special events will be permitted until an approved conditional use permit is issued [record citation], but that was before the law changed in 2018 . . . . [The law] has now changed with the [enactment of the Outdoor Events] Ordinance, which governs." Therefore, this court should "direct[] the trial court to enter a judgment declaring that Holguin is entitled to the benefits and regulations of the [Outdoor Events] Ordinance."

The Outdoor Events Ordinance is inapplicable to appellants. "The purpose of [section] 8107-46 is to regulate

outdoor events to ensure they are compatible with surrounding land uses and are not detrimental to public health and safety of the environment." (NCZO § 8107-46.1.) The NCZO defines "Outdoor Events" as excluding events "addressed by a permit or entitlement issued under this Chapter." (NCZO § 8102-0.) Therefore, the Outdoor Events Ordinance does not override ZC15-0948's requirement that "[n]o special events will be permitted on the site until an approved Conditional Use Permit is issued." Nor does it override the restrictions set forth in the March 5, 2008 letter.

In a letter to Holguin dated August 27, 2021, the County's Code Compliance Director gave additional reasons why the Outdoor Events Ordinance does not apply to appellants' winery: "By its own terms, the Outdoor Events Ordinance does not apply to events which are 'separately regulated [under this Chapter]' . . . . (NCZO, § 8102 . . . .) Wineries in the Agricultural-Exclusive zone, including wineries with a tasting room (such as [appellants' winery]) are 'separately regulated' under the NCZO (see NCZO, § 8105-4 . . . .); thus, events held at [appellants'] winery fall outside the purview of the Outdoor Events Ordinance. Winery events on [appellants'] property are further regulated by the nonconforming use provisions of the NCZO and for that additional reason such events are not subject to the Outdoor Events Ordinance. (See Articles 2 and 13.)"

"In interpreting municipal [or county] ordinances, we exercise our independent judgment as we would when construing a statute. [Citation.] Nonetheless, a city's [or county's] interpretation of its own ordinance "'is entitled to great weight unless it is clearly erroneous or unauthorized.'" [Citation.] . . . Greater deference is accorded an agency's interpretation where

34

"'the agency has expertise and technical knowledge . . . since the agency is likely to be intimately familiar with regulations it authored and sensitive to the practical implications of one interpretation over another.'"" (*Berkeley Hills Watershed Coalition v. City of Berkeley* (2019) 31 Cal.App.5th 880, 896.)

Accordingly, regardless of whether the applicability of the Outdoor Events Ordinance is moot, the trial court did not err in denying the third cause of action's claim for declaratory relief. "'No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.'" (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19.)

*Disposition*

The judgment is affirmed. The County shall recover its costs on appeal.

<u>NOT TO BE PUBLISHED.</u>


YEGAN, J.


We concur:


GILBERT, P. J.


BALTODANO, J.


35

APPENDIX A

COUNTY OF VENTURA

# ZONING CLEARANCE

RESOURCE MANAGEMENT AGENCY

ZONE CLEARANCE NO. 37254     CASE REFERENCE NO. RM.BK.5, Pg 25½

| PROJECT ADDRESS | LOCALITY | ZONE | CODE SECT. NO. | OPEN SPACE PLAN |
|---|---|---|---|---|
| 10024 Old Creek Road | Oakview CA | A-E | 8120-0.1.15 | O-S |

| ASSESSOR PARCEL NO. | NEAREST CROSS ST. | LOT WIDTH | LOT DEPTH | LOT AREA |
|---|---|---|---|---|
| 35-100-31 | Hwy. 33 | IRREG | IRREG | 328.74 AC |

| PROPOSED USE(S) | MIN. FRONT YD. | MIN. REAR YD. |
|---|---|---|
| Temporary/Portable Produce Stand | 20' | 20' |

| OWNER | PHONE | MIN. SIDE YD. | MIN. SIDE YD. (REAR 1/3) |
|---|---|---|---|
| John K. Maitland | 649-4132 | 5' | |

| MAIL ADDRESS | MAX. HEIGHT | MIN. DIST. BETWEEN BLDGS. |
|---|---|---|
| Box 173 Oakview CA 93022 | 25' | 6' |

| APPLICANT | PHONE | REQUIRED PARKING (9' x 20' per space) |
|---|---|---|
| Charles Branham - Old Creek Ranch Winery | | OPEN; CARPORT; 2-CAR GARAGE |

| MAIL ADDRESS | ENVIRONMENTAL DOCUMENT |
|---|---|
| Box 173 Oakview CA | ☒ EXEMPT ☐ ND/CND ☐ EIR |

SHOW LOCATION OF EXISTING AND PROPOSED BUILDINGS AND ACTUAL DISTANCES TO PROPERTY LINES AND BETWEEN BUILDINGS.

ASSESSOR PARCEL NO. 35-100-31

*NOTICE: Before foundation inspection, lot lines shall be identified by owner or authorized agent.

*NOTICE: This clearance becomes null and void if work or construction authorized is not commenced within, or is suspended or abandoned for a period of , 180 days.

SPECIAL CONDITIONS OR REQUIREMENTS:

Bldg & Safety permit exempt. P. Salter C. Nance

STATEMENT: I hereby acknowledge that I have read this zoning clearance and state that the information given is correct and agree to comply with all provisions of the county zoning ordinance code.

| APPLICANT'S SIGNATURE | DATE | APPROVAL SIGNATURE | DATE |
|---|---|---|---|
| Charles Branham | 12/22/81 | Gregory Dongles | 12/22/81 |

WHEN PROPERLY VALIDATED THIS IS YOUR ZONING CLEARANCE



# County of Ventura Planning Division

*800 South Victoria Avenue, Ventura, CA 93009-1740 • (805) 654-2488 • http://www.ventura.org/rma/planning*

### Inauguration of Use ZC15-0948
### Assessor's Parcel No.: 0350100315

| | |
|---|---|
| Date Issued: | 09/21/2015 |
| Date Expires: | 3/21/2016 |
| Fee: | $155.00 |
| Issued By: | E Valencia |

| **Property Owner:** | **Applicant:** |
|---|---|
| HOLGUIN ANDREW R | Andrew Holguin |
| **Mailing Address:** | **Mailing Address:** |
| 16 N OAK ST 2ND FL | 623 Azure Ct. |
| VENTURA , CA 93001 | Oak View, CA 93023 |
| **Telephone:** | **Telephone:** 805.701.3341 |

**ZONING CLEARANCE TYPE;**      Inauguration of Use

**Site Address:**      10024 OLD CREEK, OJAI 93023
**Parent Case No.:**
**Lot Area Sq Ft:**   14319914          **Lot Area Acres:**   328.74
**Legal Lot Status:**                        **Map & Lot No:**

**PROJECT DESCRIPTION:** Zoning Clearance for a certificate of occupancy for an existing winery of up to 2,000 sq. ft. (bottling, processing, and storage) which includes a change of ownership.
There is a permitted produce stand with a non-conforming wine tasting room (Zoning Clearance #37254).

The hours of operations for the tasting room will be:

Summer
Monday - Thursday: 11:00 A.M. to 4:00 P.M.
Friday - Sunday: 11:00 A.M. to 5:00 P.M.

Winter
Friday - Sunday: 11:00 A.M. to 4:00 P.M.

***No special events will be permitted on the site until an approved Conditional Use Permit is issued***

See previous correspondence between Planning Management and previous owner for clarification.

**APPLICABLE ZONING:**

**Zoning RA-5 ac**                          **Zoning:**      AE-40 ac
**Area Plan:**   Ojai Valley                **Area Plan Designation:**      Rural Residential 5-10 AC Min.
**General Plan:**   Open Space

**Split Zoning:**
**Zoning:**   AE-40 ac/SRP
**Area Plan Designation:**      Open Space 10 AC Min.
**General Plan:**   Rural

**FEES:**                                    **Total Fees:**      155.00

| ZONING CLEARANCE NO. | ZC15-0948 | | APN: | 0350100315 |
|---|---|---|---|---|

**ATTACHMENT(S):**

| | | | | |
|---|---|---|---|---|
| N | Plot/Site Plan | | N | Floor Plans |
| N | Ordinance Standards | | N | Permit Conditions |
| N | Compliance Agreement | | N | Elevations |
| N | Declaration | | N | Removal Notice and Caveats |
| N | Cross Sections | | N | Arborist Report |
| N | HOA Approval | | N | Affidavit |

OTHER:

---

**NOTES:**

1. This Zoning Clearance becomes valid once the fees are paid.
2. This Zoning Clearance will be nullified pursuant to the Zoning Ordinance if the information provided by the applicant was not full, true and correct; it was issued erroneously; or it does not comply with the terms and conditions of the permit originally granting the use.
3. This Zoning Clearance expires within 180 days of its issuance date unless a Building Permit is issued. Once a building permit is issued, construction must commence within 180 days. This Zoning Clearance expires if construction does not commence within 180 days of issuance of a building permit.
4. The property owner is responsible for identifying all property lines and ensuring that all the requirements of this permit are complied with.
5. That authorizations by other County Departments that exceed the allowable limits noted herein do not excuse the property owner from complying with the provisions of this permit. (The stricter provisions apply).
6. The proposed project will not result in the removal of more than 50% of the roof or floor area of a non-conforming structure.
7. By May 15th of each year the property owner shall submit a "verification report" and applicable fees demonstrating to the Planning Director's satisfaction that the farmworker/animal caretaker meets the Zoning Ordinances' applicable employment criteria.
8. If the parcel numbers cited in this permit are within the boundary of a Homeowner's Association, additional review and approval of the project may by required by the HOA's Conditions, Covenants & Restrictions (CC&R's). HOA review and approval is the responsibility of the property owner.

**BY SIGNING BELOW I CERTIFY THE FOLLOWING:**

- I am the owner of the subject property or I am the authorized agent of the property owner and have his/her permission to obtain this permit.
- I have noted on the attached plot plan all of the following applicable attributes: existing and proposed structures, Protected Trees (Oaks, Sycamores, and any 30+" diameter trees), marshes, wetlands, streams, rivers, landslides, edges and toes of slopes, abandoned or active oil wells, septic systems and leach fields. I have illustrated all roads, public and private easements, and utilities on the attached plot plan/site plan accurately and accept responsibility for any encumbrances, restrictions, or agreements on the subject property.
- I have illustrated all roads, public and private easements, and utilities on the attached plot plan/site plan accurately and accept responsibility for any encumbrances, restrictions, or agreements on the subject property
- The information provided in this Zoning Clearance and attached plot/site plans, floor plans and elevations are full, true and correct.
- I have been informed that I am responsible for contacting the applicable Homeowners Association or Property Owners Association to ensure compliance with the CC&R's.
- I have reviewed, read and understand the terms, notes and conditions of this permit and as depicted in related attachments, and agree to abide by them and all other provisions of the Ventura County Zoning Ordinance. I further understand that the permit can be nullified for cause as noted above.

_____
**Applicant Signature**

FOR OFFICIAL USE ONLY

ISSUED BY: E Valencia

DATE ISSUED: 09/21/2015

_____
**Signature**

APPENDIX C

Department of Alcoholic Beverage Control

Jept. of Alcoholic Beverage Contr:
VENTURA
JAN 3 1 2018

State of California
Edmund G Brown Jr. Governor

### LICENSED PREMISES DIAGRAM (NON-RETAIL)

| 1 APPLICANT NAME (Last, first, middle) | 2 LICENSE TYPE |
|---|---|
| OCRW, Inc | 02 |
| 3 PREMISES ADDRESS (Street number and name, city, zip code) | 4 NEAREST CROSS STREET |
| 10024 Old Creek Road, Ventura California 93001 | Old Creek Rd & Ventura Ave. |

The diagram below is a true and correct description of the entrances, exits, interior walls and exterior boundaries of the premises to be licensed, *including dimensions*.

DIAGRAM



Entrance and exit points are shown in Red.

200'

650'



No Alcohol Beyond This Point

3'

The Premises Boundary (shown in blue above) takes advantage of posted signs and natural delineation borders, such as fences, trellises, landscaping, etc where available to delineate its border, otherwise it is made up of lodge poles with 1" rope between, as shown.

It is hereby declared that the above-described boundaries, entrances and planned operation as indicated on the reverse side, will not be changed without first notifying and securing prior written approval of the Department of Alcoholic Beverage Control. I declare under penalty of perjury that the foregoing is true and correct.

| APPLICANT SIGNATURE (Only one signature required) | DATE SIGNED |
|---|---|
| | 1/30/2018 |

FOR ABC USE ONLY

CERTIFIED CORRECT

PRINTED NAME NICK SANTUCHE

INSPECTION DATE 3/29/18

ABC-257-NR (rev. 01-11)

County of Ventura
Planning Commission Hearing
PL18-0123, PL18-0067, PL19-0010
Exhibit 37 – Old Creek Ranch
Winery's 2018 ABC License

**Administrative Record 2387**

Benjamin F. Coats, Judge

Superior Court County of Ventura

_____

Jeffer Mangels Butler & Mitchell and Matthew D. Hinks, Lara L. Leitner, for Plaintiffs and Appellant.

Tiffany N. North, County Counsel, Jeffrey E. Barnes, Chief Assistant County Counsel, David Edsall, Jr., Assistant County Counsel, for Defendant and Respondent.